## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | |
| | ) | Chapter 11 |
| | ) | |
| HARI 108, LLC, | ) | No. 21-08044 |
| Debtor. | ) | Honorable Judge Timothy A. Barnes |
| | ) | |

### DEBTOR'S RESPONSE IN OPPOSITION TO MOTION SEEKING DISMISSAL OR CONVERSION OF CHAPTER 11 PROCEEDINGS

Hari 108, LLC. (Hari 108 or Debtor), by and through its attorney, O. Allan Fridman, submits the following response in opposition to the United States Trustee's ("UST") Motion to Convert or Dismiss pursuant to 11 U.S.C. §1112, and in support thereof, states as follows:

### Introduction

In order for this Court to find that conversion or dismissal of this case is warranted, the UST, as movant, must establish that "cause" exists. Under section 1112 of the Bankruptcy Code, the court shall, upon the request of a party in interest, notice, and hearing, and for cause, dismiss a pending Chapter 11 case. 11 U.S.C. § 1112(b). The UST asserts that cause exists under 11 USC 1112(b)(4)(J) failure to file a disclosure statement, or to file or confirm a plan, within the time fixed by this title or by order of the court.

Since filing this case, Hari 108 has complied with its obligations under the code, filed monthly operating reports, sought cash collateral orders, paid adequate protection payments under §362, and timely filed its plan and disclosure statement.

### Background

The Debtor operates HARI 108, LLC, doing business as Illinois Valley Food & Deli ("IVFD.") IVFD is a grocery store and delicatessen operating in LaSalle, Illinois. Hari was formed on February 17, 2011. The Debtor acquired IVFD as a going concern operating in LaSalle for over

1

sixty years.

The Debtor buys its produce and supplies through central distributors where inventory is purchased at discounted prices based on group buying, and members are given end-of-the-year volume discounts through rebates. The Debtor was a Central Grocers Cooperative distribution and rebate program member. On May 15, 2017, Central Grocers Cooperative filed for Chapter 11 bankruptcy. As a result, of that bankruptcy, the Debtor lost over $248,000 in rebates and membership interest in Central Grocers.

In 2019, Debtor's employees voted and withdrew from the various employees' unions. The withdrawal from the union triggered a withdrawal liability from United Food and Commercial Workers Unions and Employers Midwest Pension Fund and United Food and Commercial Workers International Union-Industry Pension Fund ("collectively referred to as the Unions"). The withdrawal liability is based upon future pension benefits that will be owed to employees that worked for IVFD in the past before HARI 108 even acquired the grocery store. When the Debtor purchased IVFD in 2011, they were unaware of the withdrawal liability they received with the purchase. In 2020, the two labor unions filed suit under ERISA's withdrawal liability and obtained judgments over $324,937.52, and another union claimed withdrawal liability over $823,686.65.

In 2020, HARI 108 began modernizing and renovating the grocery store. This included a significant outlay of expenses for new refrigerators, display cases, and repairs to the grocery store. In 2020, HARI received a U.S. Small Business Administration Economic Disaster loan for $150,000, enabling it to survive during the COVID-19 Pandemic and retain its employees.

On June 30, 2021, Hari 108 filed its petition for relief under chapter 11 to reorganize. Hari filed its original plan or reorganization within the 180-day period on December 27, 2021, as provided for in 11 USC 1121(e)(1). After discussion with two secured creditors, amendments were made to the plan, and the Debtor filed its amended Plan of reorganization on April 27, 2022, within

the 300 days provided for in 11 USC 1121 (e)(2). Hari filed its motion to extend the 45-day confirmation requirements under §1129(e). The UST objected to the motion, and the Court denied the motion. During the pendency of the case, the Court did not set a deadline for Hari 108 to file a plan or disclosure statement. In addition, Hari 108 has not failed to comply with any of this Court's orders.

### Relevant statutes

A court must be careful not to deny the protection of the Bankruptcy Code to a debtor whose legitimate efforts at financial rehabilitation may be hidden among derivative benefits (such as the delay of creditors resulting from the automatic stay) that, if viewed alone, might suggest bad faith." *In re Bovino*, 496 B.R. 492, 498-500 (Bankr. N.D. Ill. 2013). Conversion or dismissal is a "drastic measure," and the movant bears the burden of proving that the relief requested is "warranted and not premature. *In re Bovino*, 496 B.R. 492, 498-500 (Bankr. N.D. Ill. 2013).

The initial burden to demonstrate "cause" under section 1112(b) lies with the movant, and that burden must be shown by a preponderance of the evidence. *In re Draiman*, 450 B.R. 777, 826 (Bankr.N.D.Ill.2011). However, "[o]nce the movant shows 'cause,' the burden shifts to the debtor to establish one of two exceptions in section 1112(b)." Id. Section 1112(b)(2) provides that the court may not convert or dismiss a Chapter 11 case if it is not in the best interest of the creditors, and: (A) there is a reasonable likelihood that a plan will be confirmed within the timeframes ... within a reasonable period of time; and (B) the grounds for converting or dismissing the case include an act or omission of the debtor other than under paragraph (4)(A)—(i) for which there exists a reasonable justification for the act or omission; and (ii) that will be cured within a reasonable period of time fixed by the court. 11 U.S.C. § 1112(b)(2).

3

**I. Application of §1112 (b)(1) to Allegations in Motion.**

In order for the Court to consider conversion or dismissal of the case, the Court must first find that UST has established "cause" for relief under §1112(b). A fundamental purpose of chapter 11, in the case of reorganization, "is to prevent a debtor from going into liquidation, with an attendant loss of jobs and possible misuse of economic resources. *N.L.R.B. v. Bildisco & Bildisco, 465 U.S. 513, 528, 104 S.Ct. 1188, 79 L. Ed. 2d 482 (1984)*. Fundamental purposes of Chapter 11 also include maximizing the value of the estate for the benefit of all creditors, promoting equality of distribution among creditors, and avoiding piecemeal, preferential dismemberment of a debtor's assets. *In re Holley Garden Apartments, Ltd., 238 B.R. 488, 494 (Bankr. M.D. Fla. 1999)*.

A materiality standard should be applied when assessing whether cause exists under the enumerated grounds that constitute cause under *§ 1112(b)(4)*. Not applying a materiality standard to the enumerated grounds would undermine the fundamental purposes of Chapter 11. For example, it is common sense that a Chapter 11 case should not be converted or dismissed under *§ 1112(b)(4)(F)* or *§ 1112(b)(4)(I)* if a debtor in possession that is generally discharging its duties files a monthly operating report a few days late, even if without just excuse, or pays a post-petition tax late. *In re Melendez Concrete, Inc.,* 2009 Bankr. LEXIS 2925, *17-18 (Bankr. N.M. 2009).

    A.    **The UST does not meet its burden of proof in establishing cause.**

Courts have broad discretion to dismiss a Chapter 11 case for cause but need to also be mindful of the open access of the bankruptcy process and to allow debtors a fair opportunity to reorganize their assets. *Strug–Div., 375 B.R.* at 449. Nothing in Section 1112(b) requires either dismissal or conversion. *In re Jartran, Inc.*, 886 F.2d 859, 868 (7th Cir.1989).

Section 1112(b)(4) lists different actions included in the definition of "cause," but that list

4

is not exhaustive. *In re Tekena USA, LLC,* 419 B.R. 341, 346 (Bankr.N.D.Ill.2009)

Pursuant to §1112(b)(2) the court is not required to convert or dismiss if (i) the debtor or another party objects, (ii) the act or omission is other than a substantial or continuing loss to or diminution of the estate coupled with the absence of a reasonable likelihood of rehabilitation, and (iii) the objecting party establishes that there is a reasonable likelihood that a plan will be confirmed within a time specified in the statute, that there exists a reasonable justification for the act or omission, and that the act or omission will be cured within a reasonable period fixed by the court. *Wallace,* 2010 Bankr. LEXIS 261, *22; *In re Emerging Communications, Inc.* 2007 Bankr. LEXIS 4763, *44-45 (Bankr. V.I. 2007). There is no allegation in the motion that the Debtor has caused any loss or diminution to its assets.

1. **There is still a reasonable likelihood of reorganizing.**

The Motion argues that the Debtor cannot confirm a plan as the 45-day window has expired. Motion at ¶ 21. The UST cites 1112(b)(J)(4) based on the failure to file a disclosure statement, or to file or confirm a plan, within the time fixed by this title or by order of the court. However, the Motion misinterprets that section. *See In re Simbaki, Ltd.*, 522 B.R. 917, 923 (Bankr. S.D. Tex. 2014) [holding "within the time fixed by this title" refers to § 1121(e)(2) requiring the debtor to file a plan within 300 days.]

In this case, the court did not set a deadline, and the Debtor has complied with the 180 days deadline and the 300-day deadline as set forth in section 1121(e). Bankruptcy courts have held where there was no order fixing the time for the debtor to file a plan, paragraph (4) of Section 1112(b) is not grounds to dismiss this case. *In re Nielsen*, 6 B.R. 82, 83 (Bankr. N.D. Ala. 1980)

2. **1112(b)(J)(4) Does not mandate dismissal for failure to confirm the Plan.**

Several bankruptcy Courts have held that failure to confirm a plan under §1129(e) does not mandate dismissal. *In re Simbaki, Ltd.*, 522 B.R. 917, 918 (Bankr. S.D. Tex. 2014); *In re*

*Crossroads Ford, Inc.*, 453 B.R. 764, 769-70 (Bankr. D. Neb. 2011) (holding that failure to confirm a plan does not mandate dismissal); *In re Maxx Towing, Inc.*, 2011 Bankr. LEXIS 2826, 2011 WL 3267937 at *4 (Bankr. E.D. Mich. July 27, 2011); *In re Mississippi Sports and Recreation, Inc.*, 483 B.R. 164, 167 (Bankr. W.D. Wis. 2012). *In re Simbaki, Ltd.*, 522 B.R. 917, 923 (Bankr. S.D. Tex. 2014).

In *Simbaki, Ltd,* the court was faced with a similar fact pattern as in this case; the Debtor filed a plan within the 300-day deadline but was unable to confirm the case within the 45-day deadline. *Id* at 922. *In re Simbaki, Ltd,* the court denied the motion to dismiss under 1112(b)(4)(j). *Id* at 923. In that case, the court held that the plain language of § 1129(e) itself indicates that dismissal or conversion is not mandatory once the deadline has passed. *Id* at 924. The Court reasoned that the statute requires a court to take action on a plan once it has been filed but does not appear to set any deadline for the debtor. *Id at 924.* The court noted that this contrasts with § 1121(e), which mandates that the plan proponent, rather than a court, take certain action. *Id* at 924. The *Simbaki* court held that while dismissing or converting the debtor's case in a situation where it failed to comply with a deadline is appropriate, imposing a penalty on a debtor when a court did not approve their plan is a different proposition. *In re Simbaki, Ltd.*, 522 B.R. 917, 924 (Bankr. S.D. Tex. 2014).

Under the maxim that courts should give effect to all parts of a statute and should not adopt a statutory construction that makes any part superfluous or meaningless if that result can be avoided, the court analyzed 1112(b)(4)(J). *In re Simbaki, Ltd.*, 522 B.R. 917, 922 (Bankr. S.D. Tex. 2014), The Court held that Section 1112(b)(4)(J) establishes that cause for dismissal or conversion exists where there has been "failure to file or confirm a plan, within the time fixed by this title or by order of the court." *Id* at 923. The Court interpreted the code and held there is no deadline for filing a plan in the Bankruptcy Code for a chapter 11 case other than in small business

6

cases. *Id* at 923. Therefore, *Simbaki* reasoned the phrase "within the time fixed by this title" must be referring to § 1121(e)(2). The Court held that §§1112(b)(4)(J) and 1121(e)(2) still set a limit on how long a debtor can wait to file a plan before the case is dismissed or converted. *Id* at 923. The court held that if a small business debtor does not file a plan within 300 days or obtain an extension, its case will be dismissed or converted because it failed to file a plan "within the time fixed by this title," regardless of whether non-debtor proponents are bound by the deadline. *In re Simbaki, Ltd.*, 522 B.R. 917, 923 (Bankr. S.D. Tex. 2014)

Moreover, the *Simbaki* court held that the interpretation that 1112(b)(4)(J) to mandate dismissal or conversion if a plan is not confirmed could lead to absurd results, and Court rejected this interpretation. Id at 923-24. The Court proposed that such interpretation would lead to a scenario where a debtor files a plan on the day of the order for relief but fails to obtain confirmation within 45 days. *Id* The Court held that under § 1121(e)(2), the debtor would still have 255 days to file a new plan. *Id.* However, under the interpretation of §1112, the court must dismiss or convert the case as soon as a party in interest makes the request. *Id* at 923-924. The Court reasoned that in order to avoid this harsh result, a sensible debtor would wait as long as possible to file a plan to negotiate with creditors and maximize their chance at success. *Id.* The court concluded that this is inconsistent with Congress's intent in creating special deadlines for small business cases in order to prevent debtors from treating chapter 11 as a "parking lot. *In re Simbaki, Ltd.*, 522 B.R. 917, 923-24 (Bankr. S.D. Tex. 2014)

In the present case, the Debtor has complied with its filing 180-day and 300 days deadline under 1121(e) to timely file a plan and disclosure statement; the Debtor has made its adequate protection payments and complied with reporting deadline. Therefore, there is no cause to dismiss under §1112.

7

### 3. The Section 1121(e) Deadline Does Not Apply to Non-Debtor Plan Proponents.

*In re Simbaki, Ltd.*, a secured creditor sought a continuance to allow the plan to be formulated *In re Simbaki, Ltd.*, 522 B.R. 917, 919 (Bankr. S.D. Tex. 2014). The court, in analyzing §1121, held that § 1121(e)(2) refers only to the plan contemplated in § 1121(e)(1), namely the plan formulated by the debtor. *In re Simbaki, Ltd.*, 522 B.R. 917, 921 (Bankr. S.D. Tex. 2014). The Court reasoned that if Congress intended the amended §1121(e)(2) to apply to all plans, it certainly knew how to say so. *Id*. In reviewing the amendments to 1121 from the general language of "all plans," evinces an intent to restrict the application of § 1121(e)(2) to only those plans filed by debtors. *Id at* 921. Moreover, the court found further support for this interpretation can be found in § 1121(e)(3)(A), which allows only the debtor to obtain an extension of the statutory deadline. Id at 921. The court noted that Pre-BAPCPA, § 1121(e)(3) allowed an extension "on request of a party in interest" for cause. *Id*. However, the amended statute no longer allows any party in interest to obtain an extension, instead limiting extensions to only the debtor. Interpreting the 300-day deadline in § 1121(e)(2) to apply to creditors would mean that a creditor who wishes to confirm a plan is subject to the same drop-dead provision as a debtor, yet unlike the debtor, has no ability to extend the deadline *Id*. The court noted that applying § 1121(e) to creditors and then providing no possibility of extension is "absurd." *Id* at 921. A more reasonable interpretation of § 1121(e)(3)(A) is that because only the debtor is bound by the § 1121(e)(2) deadline, only the debtor needs the ability to obtain an extension. That case held that Congress's intent to provide greater judicial oversight over small business debtors rather than creditors is apparent upon examination of the House Committee on the Judiciary's report recommending passage of BAPCPA. *In re Simbaki, Ltd.*, 522 B.R. 917, 921 (Bankr. S.D. Tex. 2014).

The UST's Motion relies on *In re 250 Pixley Road, LLC*, No. 17-20125-PRW, 2018 Bankr. LEXIS 765, at *1 (Bankr. W.D.N.Y. Mar. 16, 2018). That case dealt with a Debtor with a single

unsecured credit with a claim of $968, and because of the debtor's consistent failure to timely file operating reports; and Debtor failed to meet or even acknowledge its burden to demonstrate the existence of unusual circumstances such that dismissal was not warranted under the constraints imposed by § 1112(b)(2)(A), The analysis of that case was not as extensive as *Simbaki* as this opinion is only two pages that did not analyze the amendment to 11 USC 1121 nor did it have an n interested creditor willing to propose a plan.

*In re Shea, Ltd.*, 545 B.R. 529, 539-40 (Bankr. S.D. Tex. 2016), the bankruptcy court also held that §1121 demonstrates that creditors, as parties in interest, may file competing plans in a small business case beyond 300 days from which an order for relief was entered. In that case, the court held that Section 1112(b)(2) forbids a court from converting or dismissing a case when the court "finds and specifically identifies unusual circumstances establishing that converting or dismissing the case is not in the best interests of creditors and the estate" and "the debtor or any other party in interest establishes that:"

(A) there is a reasonable likelihood that a plan will be confirmed within the timeframes established in sections 1121(e) and 1129(e) of this title, or if such sections do not apply, within a reasonable period of time; and
(B) the grounds for converting or dismissing the case include an act or omission of the debtor:
(i) for which there exists a reasonable justification for the act or omission; and
(ii) that will be cured within a reasonable period of time fixed by the court.
*In re Shea, Ltd.*, 545 B.R. 529, 535 (Bankr. S.D. Tex. 2016)

In *Shea*, the court allowed a creditor to file a plan after the 300-day deadline. The court ruled no portion of §§ 1121 or 1129 prohibited a bank and other creditors that held claims against both businesses from filing a competing bankruptcy plan after the businesses failed to obtain confirmation of a Chapter 11 plan by the deadlines §§ 1121 and 1129 established. The Court ruled that because it was still possible to confirm plans for both businesses, there was no reason to

9

convert either case to one under Chapter 7 or to dismiss either case. *In re Shea, Ltd.*, 545 B.R. 529, 531 (Bankr. S.D. Tex. 2016)

Numerous bankruptcy courts have adopted the reasoning exposed in *In re Simbaki* and its extensive analysis of §§1112, 1121, and 1129. *In re Destileria Nacional, Inc.*, No. 20-01247 (ESL), 2021 Bankr. LEXIS 1641, at *22 (Bankr. D.P.R. June 21, 2021), the court adopted the reasoning of In *In re Simbaki and In re Shea.* In that case, the court denied a voluntary motion to dismiss under §1112 and ultimately confirmed a creditor plan. See also *In re Destileria Nacional, Inc.*, No. 20-01247 (ESL), 2021 Bankr. LEXIS 1981, at *5 (Bankr. D.P.R. July 27, 2021) [confirming creditor plan and disclosure statement] As these cases delved into the legislative history and the interplay of the code section, they are more relevant to the analysis in this case.

In the present case, as in *Simbaki,* the Debtor has been negotiating with its secured creditor MBH, Investment LLC, regarding filing a creditor proponent plan that could be confirmed. Therefore as §1112(b)(4)(J) does not mandate the dismissal, the court should deny the UST's Motion and allow creditors the opportunity to file a creditor proponent plan.

## Conclusion

For the reasons set forth above, Debtor states that the Motion to Dismiss and Convert filed by the UST must be denied.

/s/O. Allan Fridman
Attorney for Debtor

O. Allan Fridman
555 Skokie Blvd.
Suite 500
Northbrook, Illinois 60062-
(847) 412-0788